**Electronically Filed
Intermediate Court of Appeals
29553
28-OCT-2014
09:17 AM**

NO. 29553

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


HIROKAZU NAKAJIMA,
Plaintiff/Cross-Defendant/Appellant,
v.
AKI NAKAJIMA,
Defendant/Cross-Plaintiff/Appellee


APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-DIVORCE NO. 05-1-0587)

MEMORANDUM OPINION
(By:  Foley, J. and Fujise, J., with
Nakamura, C.J. concurring separately)

On remand from the Hawai'i Supreme Court, Plaintiff/
Cross-Defendant/Appellant Hirokazu Nakajima's (**Hirokazu**) appeal
of ten orders[1] entered in the Family Court of the Second Circuit[2]

---

[1]    Those orders are:

(1) "Order Denying Plaintiff's Motion for Protective Order Against Defendant's Second Request for Production of Documents Dated April 6, 2007, filed 6/4/07," filed October 5, 2007;

(2) "Order (re: Hearings on 1) Plaintiff's Motion for Protective Order Against Defendant's Second Request for Production of Documents Dated April 6, 2007 Filed 12/6/07; 2) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 3) Defendant/Cross-Plaintiff Aki Nakajima's Motion to Continue Trial Filed 12/17/07; and 4) Other Matters)," filed January 15, 2008;

(3) "Order (re: Hearings on 1) Defendant/Cross-Plaintiff's Aki Nakjima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 2) Defendant/Cross-Plaintiff Aki Nakajima's Motion to compel Discovery Filed 2/27/08; 3) Defendant/Cross-Plaintiff Aki Nakajima's Motion Determine Foreign Law as to Alleged Sale of Stock Filed 2/27/08; 4) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Pre-Decree Relief filed 12/31/08; and 5) Other Matters)," filed May 2, 2008;

(continued...)

(**family court**) arising from his divorce from Defendant/ Cross-Plaintiff/Appellee Aki Nakajima (**Aki**), requires this court's review of Hirokazu's points on appeal numbered 5, 6, 7, 10, 11, and 12. The supreme court concluded this court correctly held that it lacked jurisdiction over Hirokazu's point on appeal number 8.

On appeal, Hirokazu contends the family court erred by[3]:

(1) finding Avalon Cove, Inc. (**Avalon Cove**) to be a marital asset;

(2) awarding Aki one-half of a conjectural increase in his Stockholder Equity in Avalon Cove when no evidence was submitted by either party during the course of the trial that any such increase occurred;

(3) directing the parties to submit written real estate appraisals of the Setagaya and Meguro properties for the family court's in camera selection without further hearing or opportunity for the parties to examine the authors of said appraisals;

(4) failing to conduct an evidentiary hearing to

---

[1]   (...continued)
(4) "Decree Granting Absolute Divorce," filed June 24, 2008;

(5) "Order Granting Award of Alimoney [sic] and Attorneys Fees and Costs," filed July 8, 2008;

(6) "Order Selecting Real Estate Appraiser," filed July 16, 2008;

(7) "Order Granting Ex Parte Motion for Issuance of Garnishee Summons After Judgment; Garnishee Summons and Order (as found in Defendant/ Cross-Plaintiff's Ex Parte Motion for Issuance of Garnishee Summons After Judgment; Declaration of Junsuke Otsuka; Exhibit "A"-"D"; Order Granting Ex Part Motion for Issuance of Garnishee Summons after Judgment; Garnishee Summons and Order, Garnishee Information)," filed August 12, 2008;

(8) "Garnishment Order," filed November 19, 2008;

(9) "Order (re: Hearing on Plaintiff's Motion for Clarification of Divorce Decree, entered on June 24, 2008, filed on July 7, 2008, and Other Matters)," filed November 26, 2008; and

(10) "Supplemental Decree" filed December 29, 2008.

[2]   The Honorable Keith E. Tanaka presided.

[3]   Hirokazu's opening brief exceeds 35 pages in violation of Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(a). Counsel for Hirokazu is warned. Future noncompliance with HRAP Rule 28 may result in sanctions.

determine the value of Avalon Cove as of the date of marriage;

(5) allowing a translator to testify based on translations of Japanese language documents prepared after the May 6, 2008 trial;

(6) entering its Finding of Fact (**FOF**) 40;

(7) denying his Request for Protective Order for documents relating to Avalon Cove over which he had no control or possession, without finding whether he had the ability to obtain these documents, and by awarding sanctions against him for failing to provide these documents;

(8) ordering him to pay Aki's attorney's fees and costs incurred in legitimating her immigration status and obtaining an authorization card when that issue was not a trial issue nor a property division as specified by law;

(9) ordering the division of the Ameritrade security account as a retirement account;

(10) making a decision regarding property in Japan, which was a question of foreign law, without first determining the issue of foreign law;

(11) issuing a garnishment order without first issuing a judgment for sums; and

(12) entering FOFs 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 41, 42, 43, 44 and 53.

## I. BACKGROUND

This appeal stems from a divorce proceeding between Hirokazu and Aki who were married in Japan on November 19, 2004. At the time of the divorce proceedings, Hirokazu was retired and marketing himself as a young retired millionaire through publications in Japan. He owned numerous assets that included accounts at TD Ameritrade Finance, H.S. Trade, and Pregoshare; interests in Avalon Cove[4]; receivables from Avalon Cove; an annuity or a retirement account at Nationwide and Oppenheimer funds; and copyrights and royalty rights from Ascom, a publishing company which published two books allegedly written by both

---

[4] Appellant incorporated Avalon Cove in Japan in 1998. Avalon Cove used mortgage financing to purchase two income-producing properties in Tokyo: the Setagaya property and the Meguro property.

3

Hirokazu and Aki.

On November 25, 2005, Hirokazu filed his Complaint for Divorce because the marriage was irretrievably broken. Aki answered Hirokazu's Complaint for Divorce and filed a Cross-Complaint for Divorce on December 22, 2005, claiming she was entitled to an order that Hirokazu pay her spousal support.

On January 3, 2006, Aki filed a request for production of documents and answers to interrogatories. On May 17, 2006, Hirokazu's counsel, Blake Okimoto (**Okimoto**), certified that Hirokazu's responses to Aki's request for answers to interrogatories would be duly served on Aki's counsel, Junsuke Otsuka (**Otsuka**). Aki alleged that several key documents, specifically those involving Avalon Cove's asset and debts and other investments, were missing from Hirokazu's responses and sent a letter to Okimoto on May 16, 2006 identifying the missing documents.

On June 22, 2006 the parties filed a "Stipulation RE: Temporary Relief" that enjoined and restrained each party from: (1) "transferring, encumbering, wasting, or otherwise disposing of any real or personal property, except as necessary, over and above current income, for the ordinary course of business or for usual living expenses[;]" (2) "listing, marketing for sale, conveying and/or attempting to sell any real property (domestic and/or foreign) owned by the parties[;]" and (3) "listing, marketing for sale and/or attempting to sell any business owned by the parties[.]" The parties were allowed, however, to buy and sell stock in the ordinary course of their business with the understanding that assets could be subject to possible document production demands in the future.

By letter dated July 28, 2006, Hirokazu's counsel, Okimoto, wrote to Otsuka in response to Aki's request to "finish his interrogatories."

On April 6, 2007, Aki filed her "Second Request to [Hirokazu] for Production of Documents" (**Second Request for Documents**). On June 4, 2007, Hirokazu responded by filing his "Motion for Protective Order Against [Aki's] Second Request for Production of Documents Dated April 6, 2007" (**June Motion for**

4

**Protective Order**). Hirokazu argued that the information which Aki requested "is well beyond general information to determine the disbursement of assets" and is akin to a "fishing expedition" into Hirokazu's financial situation. "With the exception of a one-third (1/3) interest in [sic] Japanese Partnership named 'Asset Gain'," Hirokazu objected to Aki's request to provide information relating to assets that he did not own and rather belonged to his mother, Shizume Nakajima (**Shizume**). "In this regard, [Hirokazu sought] a protective order barring and preventing any and all disclosure to [Aki] regarding assets that are not personally his." Hirokazu denied that requested materials were within his possession and control Hirokazu argued, "issues as to property division should be confined to the parties' assets and liabilities as set forth in their respective financial statements." Aki filed a cross-motion to compel discovery on August 20, 2007.

On September 19, 2007, the family court held a hearing on Hirokazu's Motion for a Protective Order. Hirokazu introduced a copy of an agreement dated August 16, 2004, which allegedly transferred Hirokazu's stock ownership of Avalon Cove (Exhibit 1). Aki's counsel, Otsuka, asked why Hirokazu could produce the "transfer of stocks" for the hearing but could not do so for Aki's Second Request for Production of Documents. Otsuka further contended Hirokazu's assertion that he had no control over Avalon Cove's documentation was inconsistent with paragraph 9 of his affidavit, which stated, "I received reports regarding the status of Avalon Cove so I would be able to help my mother as she is not receiving sufficient income and needs financial assistance." Otsuka also represented Japanese law as requiring actual transfer of stock certificates and therefore documentation of a transfer of stocks constitutes "only circumstantial evidence of any transfer of stocks."

Okimoto noted that Otsuka referred to statements Hirokazu wrote in his book and contended Hirokazu used "literary license" such that his written statements in that book were not necessarily accurate. The family court stated it would deny Hirokazu's motion for a protective order and would grant the

5

motion to compel protection of documents "even though [Okimoto is] saying this is not in [Hirokazu's] control . . . because there is [sic] some kind of documents that he can at least get, if not from the corporation, from other family members or his own records, like gift tax payments, his salary, the tax payments, 2005 tax payments, . . . passbook statements, withholding statements, the property tax assessment[.]"

On October 5, 2007, the family court granted Aki's cross-motion to compel discovery and ordered Hirokazu to produce all documents requested in Aki's Second Request for Production of Documents. The family court also issued an order denying Hirokazu's June Motion for Protective Order.

On December 6, 2007, Hirokazu filed another "Motion for Protective Order Against [Aki's] Second Request for Production of Documents Dated April 6, 2007" (**December Motion for Protective Order**) seeking protection from Aki's request of production of financial documents and materials relating to Avalon Cove. Hirokazu alleged that his mother, Shizume, the owner of Avalon Cove, wrote him a letter dated October 10, 2007 in which she stated she would not provide the requested documents to him. The translation of the letter Hirokazu provided stated in pertinent part:

> I cannot agree with your request that documents and financial statements of Avalon Cove be given to you for the purpose of your divorce. The share holder of [Avalon Cove] is me . . . . I bought it from you before you got married to Aki. You are no longer the owner of Avalon Cove. I will not agree to provide any of the documents and statements because they are personal to me. I am concerned that if I give you papers regarding my Avalon Cove they will be used for no good purpose and I will be damaged. Now Avalon Cove has absolutely nothing to do with you and your divorce procedure in [Hawai'i]. My property is entirely nothing to do with the distribution of your property.
>
> Please understand.

On December 17, 2007, Aki filed a "Motion for Civil Sanctions Under [Hawai'i Family Court Rules (**HFCR**)] Rule 37" against Hirokazu for willfully failing to comply with the family court's October 5, 2007 "Order Granting Defendant/Cross-Plaintiff Aki Nakajima's Cross-Motion to Compel Discovery, filed 8/20/07." In his declaration supporting the motion for civil sanctions,

Otsuka stated that a public record from the Japanese Ministry of Justice dated March 20, 2007 indicated Hirokazu had been reappointed as director of Avalon Cove on October 17, 2005 (Exhibit C) and noted Hirokazu had represented the alleged sale of Avalon Cove to Shizume as having occurred on August 16, 2004.

Aki received a document dated January 3, 2008 titled, "[Hirokazu's] Second Amended Responses to [Aki's] Second Request for Production of Documents dated April 6, 2007."

On January 15, 2008, the family court entered its "Order (RE: Hearings on 1) Plaintiff's Motion for Protective Order Against Defendant's Second Request for Production of Documents Dated April 6, 2007 filed 12/6/07; 2) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 3) Defendant/Cross-Plaintiff Aki Nakajima's Motion to Continue Trial Filed 12/17/07; And 4) Other Matters)" (**January Discovery Order**). The family court denied Hirokazu's December Motion for Protective Order "because the alleged letter from [Shizume] is insufficient to show compliance" with its order granting Aki's motion to compel discovery. The family court also ordered Hirokazu to produce his 2005 and 2006 U.S. income tax returns within 14 days of the hearing. The family court continued Aki's motion for civil sanctions and her Pre-decree Motion for Relief, filed on December 31, 2007 (**Pre-decree Motion**) for hearing on March 13, 2008, and provided Hirokazu two more weeks from the date of its January 8, 2008 hearing to comply with its order to produce documents in response to Aki's Second Request for Production of Documents.

Aki served a third request for production of documents on Hirokazu on February 22, 2008. Hirokazu's 2004 U.S. income tax return disclosed an income of $13,540. Nine days later Aki again filed a motion to compel discovery because Hirokazu had failed to produce all that was requested.

On February 27, 2008, Aki filed a "Motion to Determine Foreign Law as to Alleged Sale of Stocks" (**Motion to Determine Foreign Law**) wherein she moved the family court "for an order determining that under Japanese law, as a matter of law, [Hirokazu had] failed to show that the stocks he held for [Avalon

7

Cove], were transferred to his mother, [Shizume], because the alleged transfer [did] not comply with Article 128(1) of the Companies Act (Japanese law)."

On March 10, 2008, Aki filed a translation of her declaration in support of her Pre-decree Motion. Aki declared Hirokazu had inflicted physical abuse upon her in November 2005, a TRO was issued,[5] and she moved out of the marital home because she was not authorized to work in the U.S. until her immigration petition under the Violence Aginst Women Act was approved and she received an "Employment Authorization Card." Aki stated that she did not believe that Hirokazu had no income from Japan because this was contrary to what he had told her.

On March 13, 2008, the family court held a hearing on Hirokazu's motion for protective order against Aki's Second Request for Production of Documents, motion for civil sanctions, Predecree Motion, and Motion to Determine Foreign Law. Hirokazu agreed to turn over "whatever records and files [he had] and have them translated" in fourteen days (March 28, 2008) and based on that agreement, Aki moved to withdraw her motion to compel.

On April 25, 2008, Hirokazu filed a notice of intent to offer and utilize a document represented as the parties premarital agreement, dated November 10, 2004 and written entirely in Japanese.

On May 2, 2008, the family court entered an order entitled "Order (re: Hearings on[:] 1) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 2)Defendant/Cross-Plaintiff Aki Nakajima's Motion to Compel Discovery Filed on 2/27/28; 3) Defendant/Cross-Plaintiff Aki Nakajima's Motion [to] Determine Foreign Law As To Alleged Sale of Stocks Filed 2/27/08; 4) Defendant/Cross-Plaintiff Aki Nakajima's Motion and Affidavit for Pre-Decree Relief Filed 12/31/08; and 5) Other Matters)" **(May Discovery Order)**. The family court continued Aki's motion for civil sanctions until trial, but ordered Hirokazu for a third time to

_____

[5] On May 6, 2008 Hirokazu testified that, in 2005, Aki hit his cheek and he told her that he would hit her and "didn't hit her very hard." He denied hitting her again on October 8, 2005.

produce the documents requested by March 28, 2008. As to Aki's motion to compel discovery, the family court noted that Aki was withdrawing this motion without prejudice based on Hirokazu's counsel's representation that he will produce all of the requested documents and information by March 28, 2008. The family court took Aki's motion for determining foreign law under advisement.

Also on May 2, 2008, Aki filed a motion in limine to exclude the parties' alleged prenuptial agreement.

On May 6, 2008 and June 3, 2008, the family court held a trial. At the May 6, 2008 trial, Masako Yamaguchi (**Yamaguchi**) served as Aki's translator. Yamaguchi declared she was a professional translator and a registered court interpreter with the Hawai'i State Judiciary.

During his cross-examination on May 6, 2008, Otsuka asked Hirokazu to translate Exhibit NNN, which consisted of excerpts from Exhibit GGG. Hirokazu denied the document said, "stock certificate" and that it said "certificate of all registered items." Hirokazu testified the translation "stock certificate" was not correct.

On June 4, 2008, both parties filed exhibit lists.

On June 24, 2008, the family court entered a divorce decree (1) dissolving the marriage between Hirokazu and Aki; (2) recognizing that the couple had no children born of the marriage; (3) awarding no spousal support, but acknowledging Hirokazu's binding promise to pay reasonable attorney's fees and costs incurred in legitimating Aki's immigration status and obtaining and renewing her Employment Authorization Card; and (4) dividing and distributing their property and debt. The family court acknowledged that Hirokazu has an annuity and retirement account at Nationwide, Oppenheimer Funds, and Ameritrade.

The divorce decree states, "[t]here are no jointly owned securities. Each is awarded the securities held solely in their separate names. [Hirokazu's] American Express portfolio is awarded to [Hirokazu] as his sole and separate property." It also states Hirokazu had an annuity or retirement account at Nationwide, Oppenheimer Funds, and Ameritrade and awarded

Hirokazu's retirement account and annuities as his sole and separate property. Hirokazu's retirement benefits, however, were marital property subject to equitable division and Aki is entitled to her share of Hirokazu's retirement benefits.

Regarding Avalon Cove, the family court awarded Aki "her martial partnership share of the increase in value of [Hirokazu's] interest in [Avalon Cove], from the date of marriage to the end of the trial." The family court further ordered:

> If the parties cannot reach an agreement as to a determination of that value, based upon [Hirokazu's] claim that in 2004, Avalon Cove's value was $100,000.00, this amount shall be the starting value. The current value of the stocks shall be determined by an appraiser to asses [sic] the current market price of the Setagya and Meguro properties. If the revised stockholder equity amount is greater than $100,000.00, [Aki] shall have half of the increased amount as equalization payment. (If the parties cannot reach an agreement as to an appraiser, each party may each submit three proposed Japanese real estate appraisers for [the family] court's selection within two weeks from the decree. [Hirokazu] shall pay the appraisal costs.)

The family court awarded Hirokazu's books to Hirokazu as his sole and separate property and ordered that post-divorce royalties and liabilities for these books would be evenly divided.

On July 7, 2008, Hirokazu filed a "Motion for Clarification of Divorce Decree Entered On June 24, 2008," pursuant to HFCR 60(b)(1).[6] Hirokazu sought clarification "as to the enumeration of Ameritrade as an annuity or retirement account" because "the Ameritrade account indicates that it is a securities account." Noting that the divorce decree stated "the current value of the [Avalon Cove] stocks shall be determined by an appraiser to assess the current market price of Setagya and Meguro properties," Hirokazu sought clarification as to the net current value of the properties and argued that this value should include any existing debt including the mortgage balances as of the end of the trial. Hirokazu also sought clarification of the family court's award of his books as his "sole and separate

---

[6]     HFCR Rule 60(b)(1), "Relief From Judgment or Order," allows for relief "[o]n motion and upon such terms as are just, the court may relieve a party . . . from any or all of the provisions of a final judgment, order or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[.]"

property" and argued that post-divorce royalties from those books should likewise be his separate property.

In his "Supplemental Declaration of Counsel In Support Of Plaintiff's Motion For Clarification Of Divorce Decree Entered On June 24, 2008 Filed on July 7, 2008," Hirokazu requested an evidentiary hearing where the parties could submit evidence in the form of testimony and exhibits to determine the value of Avalon Cove measured by either the book value or the fair market value, but not both.

On July 8, 2008, the family court entered the "Order Granting Award of Alimoney [sic] and Attorneys Fees And Costs" (**Order Granting Fees and Costs**) awarding Aki $14,817.55 in attorney's fees and costs at Hirokazu's expense. The family court specified that $5,885.06 out of $14,817.55 was awarded to Aki to pay for her immigration processing.[7] The other $8,932.49 was awarded to Aki for the reasonable costs and attorney's fees associated with her August 20, 2007 motion to compel discovery, her December 17, 2007 motion for civil sanctions, and her Motion to Determine Foreign Law.

On July 16, 2008, the family court entered the "Order Selecting Real Estate Appraiser" (**Order re Appraiser**), to assist in the valuation of the assets of Avalon Cove and ordering Hirokazu to pay the appraisal costs. By letter dated July 16, 2008, Aki's counsel submitted an invoice of 650,000 yen for the appraisal fee.

On August 12, 2008, Aki filed an "Ex-Parte Motion for Issuance of Garnishee Summons After Judgment," requesting garnishment of Hirokazu's accounts because he had failed to pay the appraisal fee. On the same day, the family court issued an order for the issuance of a garnishee summons against Hirokazu.

On September 8, 2008, Aki filed her position statement on Hirokazu's motion for clarification of divorce decree with the

---

[7] During the marriage, Hirokazu promised he would sponsor Aki's immigration to the United States, but amid the divorce proceedings Aki incurred $5,885.06 in attorney fees and costs to legitimize her immigration status. Aki also incurred expenses relating to obtaining and renewing her Employment Authorization Card.

appraiser's report on the two Avalon Cove properties, and the "Avalon Cove's Book Records," Hirokazu's Exhibit 37, attached. Aki pointed out Hirokazu's Exhibit 37 took the position that stockholder equity in Avalon Cove at that time of the divorce was 6,032,116 yen or $60,321. The appraiser, however, assessed the present market value of both Avalon Cove properties and the stockholder equity figures were adjusted from 6,032,116 yen ($60,321) to 98,618,749 yen ($986,187.49). Because the divorce decree found Hirokazu's equity in Avalon Cove at the time of marriage was 10,00,000 yen ($100,000), Aki calculated her equalization payment to be $443,094. Aki stated Hirokazu's position that "Ameritrade are stock accounts in nature rather than retirement funds" was correct and noted the Ameritrade account may have been confused with the Ameriprise account. Aki, however, urged the family court to notice that the Ameritrade account had not been disclosed until Hirokazu's last asset and debt statement and to award it to Aki as a sanction.

On October 1, 2008, Hirokazu's counsel, Okimoto, filed a "Supplemental Declaration of Counsel in Support of [Hirokazu's] Motion for Clarification of Divorce Decree Entered on June 24, 2008, filed on July 7, 2008." In his supplemental declaration, Okimoto declared Hirokazu requests the family court set an evidentiary hearing with regard to valuation of Hirokazu's interest in Avalon Cove from the date of marriage until the issuance of the divorce decree.

On October 8, 2008, the family court held a hearing on Hirokazu's June 24, 2008 motion for clarification. Okimoto noted the family court selected an appraiser suggested by Aki and that the cost of the appraiser as represented to the family court would be 6,000 yen. Okimoto stated the appraiser had submitted a bill for 650,000 yen. Otsuka admitted to having made a typographical error in regard to the appraiser's fee, which was supposed to be $6,000 instead of 6000 yen (6000 yen is $60.00).[8] Otsuka represented $6,000 to be a reasonable appraiser's fee.

---

[8] The parties stipulated to a currency conversion rate of $1=100 yen.

The family court denied Hirokazu's oral motion to revise the appraiser selection process and his oppositions to garnishment orders. In regard to Hirokazu's motion to clarify that the Ameritrade account was a securities and not a retirement account, the family court stated:

> [Family Court]: Yeah, I was basing, if I remember correctly, and it's been a while since we had trial, but it was based on your client's own exhibit. He said these were retirement accounts, you know. I think that was his own exhibit.
>
> [Okimoto]: It is not a retirement account.
>
> [Family Court]: But that's what his exhibit essentially showed.
>
> [Hirokazu]: No, that's not right.
>
> [Otsuka]: Now it's clarified, your Honor.
>
> [Family Court]: So, in any event, I'm denying your motion and I'm going to ask [Aki's counsel] to prepare the order from today's ruling.

On November 19, 2008, the family court entered a garnishment order regarding the $6,012.11 appraisal fee that Hirokazu had failed to pay.

On November 26, 2008, the family court entered "Order (re: Hearing on Plaintiff's Motion for Clarification of Divorce Decree Entered on June 24, 2008 Filed on July 7, 2008, and Other Matters)" (**November Order Re Motion for Clarification**).[9] The family court found:

> Exhibit 37, submitted by HIROKAZU at trial as the alleged value of Avalon Cove is not in agreement with the Supplemental Declaration of Counsel filed October 1, 2008. In the Supplemental Declaration of Counsel, HIROKAZU's counsel implied that Exhibit 37 may be merely a book value of Avalon Cove. If this is true, it is in conflict with HIROKAZU's initial position that the alleged $100,000 stock sale to his mother was a legitimate transaction. This would imply that the alleged stock sale approximated the book value and not the fair market value, impeaching HIROKAZU's own statement that the transaction was legitimate. The doctrine of quasi-estoppel prohibits the reconsideration of the value of Avalon Cove at the time of marriage.

The family court found no due process violation in determining the value of the Avalon Cove properties without an evidentiary hearing because the family court's valuation method

---

[9] This motion hearing was continued multiple times.

reflected sanctions against Hirokazu for concealing his assets. The family court found the misstatement of the currency of the estimated appraisal fee to be immaterial and refused to set aside the substance of the appraisal report. Hirokazu was ordered to pay Aki $443,094 in equalization payments for Avalon Cove. The family court also denied Hirokazu's motion for clarification of: (1) the equity value of Avalon Cove because Aki's position was also that the mortgage balance can be included in the calculation of that equity value; (2) the Ameritrade issue, because the family court's ruling was based on Hirokazu's own position; and (3) the Ascom book copyright and royalties issue.

On December 26, 2008, Hirokazu filed a notice of appeal from the following documents:

(1) the "Order Denying Plaintiff's Motion For Protective Order Against Defendant's Second Request To Plaintiff For Production of Documents Dated April 6, 2007, Filed 6/4/07," filed October 5, 2007;

(2) the January Discovery Order;

(3) the May Discovery Order;

(4) the "Decree Granting Absolute Divorce," filed on June 24, 2008;

(5) the Order Granting Fees and Costs;

(6) the Order re Appraiser;

(7) the "Order Granting Ex Parte Motion For Issuance Of Garnishee Summons After Judgment"; "Garnishee Summons and Order" (as found in Defendant/Cross-Plaintiff's Ex Parte Motion of Issuance Garnishee Summons After Judgment; Declaration of Junsuke Otsuka; Exhibit 'A'-'D'; Order Granting Ex Parte Motion for Issuance of Garnishee Summons after Judgment; Garnishee Summons and Order; Garnishee Information), filed on August 12, 2008;

(8) the "Garnishment Order," filed November 19, 2008; and

(9) the November Order Re Motion for Clarification.

On December 29, 2008, the family court entered a

14

supplemental decree reiterating Hirokazu's obligation to pay attorney's fees and costs in the amount of $14,817.55 to Aki and thus a total of $457,911.55 to Aki, inclusive of her part of the division and distribution of the parties' interests.

On January 5, 2009, Hirokazu filed his request for entry of findings of fact and conclusions of law.

On January 14, 2009, Hirokazu filed an amended notice of appeal in which he appeals the nine documents listed supra in his December 26, 2008 notice of appeal as well as the family court's December 29, 2008 supplemental decree.

On January 23, 2009, Hirokazu filed a motion to stay pending appeal the family court's various orders regarding payment of alimony, attorney's fees and costs.

On February 3, 2009, the family court filed its Findings of Fact and Conclusions of Law (**COLs**). Pertinent FOFs, including those Hirokazu contests on appeal, are as follows:

> 26. There was evidence of numerous violation [sic] of the financial restraining order dated June 22, 2006 by [Hirokazu]. They include substantively reducing the account at Citibank, Japan (Ex. 52); closing of his bank account at Mitsui-Sumitomo Bank (Ex "3"); selling his Mercedes M1320 and 1995 Yamaha Wave Runner; closing Ameriprise account (Ex "10" & "P["], "52"); closing E-Trade account. Ex "EEE" & 52; and selling Asset Gain in June of 2007 for $40,000 in violation of financial restraining order. Ex M (Heisei 19 6-18 and 6-17 entries).

> 27. There was evidence of numerous nondisclosure and/or misrepresentation in the previous asset and debt statements of [Hirokazu]. There was the nondisclosure of Ameritrade account. Ex "11" & "Q". This account was opened during marriage. Ex 52. However, this account was not disclosed in the prior asset and debt statement. Ex. "CCC", "DDD", "EEE".

> 28. There was also nondisclosure of the HS Trading account. Ex "16" & "S". The account existed as of marriage. Ex 52. This account was not disclosed in the prior asset and debt statement. Ex. "CCC", "DDD", "EEE". Nor was this disclosed in the interrogatories. Ex "H". In violation of the financial retraining [sic] order, [Hirokazu] depleted all the monies in this account. Ex "52".

> 29. There was also the nondisclosure of Prego Share. [Hirokazu] invested in Prego Shares. Ex "17" and "T". Husband claims he was deceived (Ex 52), but there is no evidence he filed a lawsuit in Japan. Furthermore, this account was not disclosed in the prior asset and debt statement. Ex "CCC", "DDD", "EEE". Nor was this disclosed in the interrogatories. Ex "H".

> 30. There was also the nondisclosure of Gaitame.com.

[Hirokazu] has a foreign exchange account at Gaitame.com. Ex "23" and "U". This account was not disclosed in the prior asset and debt statement. Ex "CCC", "DDD", "EEE". Nor was this disclosed in the interrogatories. Ex "H".

31. There was also the nondisclosure of interest in Asset Gain. Admittedly, [Hirokazu] invested $10,000 in Asset Gain. Ex 52. [Hirokazu] did not disclose this information about his Asset Gain stock in his asset and debt statements. Exs "CCC", "DDD", "EEE".

32. There was also the nondisclosure of [Hirokazu's] account receivable from Avalon Cove of $45,000. Ex 37. However, this was never disclosed in [Hirokazu's] previous asset and debt statements. Exs "CCC", "DDD", "EEE".

33. There was also nondisclosure of [Hirokazu's] Receivable from Ohta. [Hirokazu] had accounts receivable in the amount of 10,000,000 yen. Ex X and 18. [Hirokazu] did not disclose the accounts receivable in his asset and debt statements. Exs "CCC", "DDD", "EEE".

34. There was also nondisclosure of intellectual property rights. [Hirokazu] did not disclose information about the copyrights and royalty rights from [Ascom] in his asset and debt statement. Ex "CCC", "DDD", "EEE".

35. Finally, there was nondisclosure of [Hirokazu's] business interest in a company called Avalon Cove.

36. Plaintiff alleged that [Hirokazu] sold to his mother 200 stocks of Avalon Cove, Inc. for 10,000,000 yen ($100,000) and denied that they were marital assets. Exhibit 36.

37. However, there is not even a signature of [Hirokazu] or his mother, the parties involved in this alleged agreement. Id.

38. In Japan, formally written contracts are usually signed and sealed. Aki testimony.

. . . .

41. This [family] court does not find any evidence of delivery of the stocks by [Hirokazu] to his mother. In fact, [Hirokazu] denies delivery of the stock.

42. The [family] court does not find any evidence of monies paid by [Hirokazu] to his mother for the stock from [Hirokazu's] account. The Court finds that [Hirokazu's] claim that there was a setoff not credible.

43. The [family] court finds that [Hirokazu] has made representation [sic] to the public in Japan that Avalon Cove is his. [Hirokazu] stated that his present income of 30,000,000 (Approx. $300,000) mostly comes from rent payments he receives from the real estates [sic] he owns in Japan. Ex "PPP."

44. [Hirokazu] argues that all of his statements were lies to the public to promote his books. [Family] court finds that [Hirokazu's] argument is not credible.

. . . .

16

46. According to the appraisal reports issued by Katsuhiro Miyata, the present value of the Meguro Property (1-554-4 Megurohoncho, Meguro-ku, Tokyo Japan) is 176,017,000 yen and the Setagaya Property (5-14-26 Kamiuma, Setagaya-Ku, Tokyo Japan) is 153,640,000 yen totaling 329,657,000 yen. Exhibits "B"-"E" attached to [Aki's] Position Statement as to [Hirokazu's] Motion for Clarification of Divorce Decree Entered on June 24, 2008, filed September 8, 2008.

47. At the time of the divorce, [Hirokazu] submitted Exhibit 37 and took the position that the two properties owned by Avalon Cove were worth 237,070.367 [sic] yen (Fixed Assets), that the Total Assets of Avalon Cove was 240,932,957 yen, and that Avalon Cove had debts in the amount of 240,392,957 yen, so that the Stockholder's Equity was 6,032,116 yen.

48. Using the appraised market value of the two real estate properties owned by Avalon Cove, the Fixed Assets value was adjusted upward from 237,070,367 yen to 329,657,000 yen. Thus the Total Assets figure was adjusted from 240,932,957 yen to 332,972,590 yen. The Total Liability & Equity was adjusted from 240,932,957 yen to 332,972,590 yen because a balance sheet must balance. The Total Liability was subtracted and the Stock Holder's Equity figures were adjusted from 6,032,116 yen to 98,618,749 yen. The [family court] finds that 98,618,749 yen or $986,187 to be the stock value of Avalon Cove at the time of divorce.

49. In connection with the alleged stock transfer to [Hirokazu's] mother on August 16, 2004, [Hirokazu] had alleged that he sold his mother 200 stocks of Avalon Cove, Inc. for 10,000,000 yen ($100,000). Exhibit 36.

50. This Court find [sic] [Hirokazu's] allegation to be an admission that the Stockholder's Equity value of Avalon Cove, Inc. was 10,000,000 yen ($100,000) at the time of marriage.

. . . .

52. [Aki] incurred [$8,932.49] in reasonable and necessary attorney fees and costs related to discovery of [Hirokazu's] complete assets including information regarding Avalon cove in the following motions:

A. [Aki's] *Motion for Civil Sanctions Under [HRCP], Rule 37* filed December 17, 2007.

B. [Aki's] *Cross-Motion to Compel Discovery*, filed August 20, 2007.

C. [Aki's] *Motion to Determine Foreign Law as to Alleged Sale of Stock*, filed February 27, 2008.

53. [Aki] incurred SIX HUNDRED FIFTY THOUSAND (650,000) Yen in appraisal fees charged by Katsuhiro Miyata. The currency exchange rate as of August 6, 2008 was $1=108.11 Yen. Thus, [Aki] incurred SIX THOUSAND AND TWELVE AND 11/100 Dollars ($6,012.11) in reasonable and necessary appraisal fees.

The family court also issued the following COLs pertinent to the division of property and equalization payments

17

from Hirokazu to Aki:

III. Conclusions of Law

. . . .

14. In accordance with all of the foregoing, a divorce decree providing as follows shall therefore enter:

. . . .

C. PROPERTY DIVISION. All of the property of the parties not specifically distributed elsewhere in this Decree shall be distributed as follows:

. . . .

7. Avalon Cove Inc. Stocks. [Aki] is Awarded her marital partnership share of the increase in value of [Hirokazu's] interest in Avalon Cove, Inc. from the date of the marriage to the end of the trial. Based upon [Hirokazu]'s claim in 2004, Avalon Cove's value was $100,000.00, this amount shall be the starting value. As sanctions for hiding assets, [Hirokazu] is prohibited from introducing appraised value of the properties. Based on the appraisal report, the current market price of the Setag[a]ya and Meguro properties is $3,329,796. Using [Hirokazu's] balance sheet (Ex 32), the adjusted current value of the stocks is $986,187. [Aki] shall have half of the increased amount ($886,187) as an equalization payment, i.e. FOUR HUNDRED FORTY THREE THOUSAND AND NINETY FOUR AND NO/100 Dollars ($443,094). [Hirokazu] shall pay [the real estate appraiser's] reasonable and necessary appraisal fees in the amount of SIX THOUSAND TWELVE AND 11/100 Dollars. ($6,012.11).

On February 22, 2013, this court filed its "Order Dismissing Appeal" on the basis that it lacked jurisdiction over the ten family court orders. On March 4, 2013, Hirokazu filed his "Plaintiff/Cross-Defendant-Appellant's Motion for Reconsideration of the Court's Order Dismissing Appeal, filed on February 22, 2013." On March 8, 2013, this court filed its "Order Denying 'Plaintiff/Cross-Defendant-Appellant's Motion for Reconsideration of the Court's Order Dismissing Appeal, filed on February 22, 2013.'"

On April 9, 2013 Hirokazu filed his application for writ of certiorari, which the Hawai'i Supreme Court accepted on May 21, 2013.

On February 13, 2014, the supreme court filed its "Order Vacating Intermediate Court of Appeals' Order Dismissing Appeal and Remanding Appeal to ICA." The supreme court determined that this court had jurisdiction over Hirokazu's appeal and vacated this court's "Order Dismissing Appeal," filed

on February 22, 2013.

On May 9, 2014, this court filed a memorandum opinion, which reviewed the family court's November Order Re Motion for Clarification. This court interpreted the supreme court's February 13, 2014 remand order as providing that this court had "jurisdiction only over Hirokazu's appeal from the November Order Re Motion for Clarification pursuant to Hawaii Revised Statutes **(HRS)** § 571-54 (2006 Repl.)" Therefore this court declined "to address Hirokazu's points on appeal numbered 5, 6, 7, 8, 10, 11 and 12 because some address subject matter that falls outside of the family court's November Order Re Motion for Clarification, and Hirokazu fails to provide argument in support of the remaining." This court addressed points on appeal numbered 1, 2, 3, 4, and 9.

On May 27, 2014, this court filed an order denying Hirokazu's motion for reconsideration of the May 9, 2014 memorandum opinion. On June 13, 2014, this court filed its judgment on appeal. On June 26, 2014, Hirokazu filed an application for writ of certiorari to the Hawai'i Supreme Court.

On August 7, 2014, the supreme court filed its order accepting Hirokazu's application for writ of certiorari, which stated this court had "misconstrued" the February 13, 2014 order and "erroneously concluded that it lacked jurisdiction to address Hirokazu's points on appeal numbers 5, 6, 7, 10, 11, and 12" but correctly held that Hirokazu's point on appeal number 8 fell outside jurisdictional boundaries. The supreme court vacated this court's June 13, 2014 judgment on appeal and remanded the appeal for disposition of remaining issues. The August 7, 2014 order accepting Hirokazu's application for writ of certiorari further provided: "[t]he family court's sanctions in this case fell within the scope of its authority. Subject to the issues that the ICA must address on remand, the valuation and division of Avalon Cove did not constitute an abuse of discretion."

## II. STANDARDS OF REVIEW

### HFCR Rule 60(b)

The standard of review for the grant or denial of a HFCR Rule 60(b) motion is whether there has been an abuse of

19

discretion.  De Mello v. De Mello, 3 Haw. App. 165, 169, 646 P.2d 409, 412 (1982).

> Under the abuse of discretion standard of review, the appellate court is not authorized to disturb the family court's decision unless (1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason.

Wong v. Wong, 87 Hawai'i 475, 486, 960 P.2d 145, 156 (App. 1998) (brackets omitted) (quoting Bennett v. Bennett, 8 Haw. App. 415, 426, 807 P.2d 597, 603 (1991)).

### Family Court's Exercise of Discretion

> The family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion.  Under the abuse of discretion standard of review, the family court's decision will not be disturbed unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

In re Doe, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994) (internal quotation marks, citations, brackets, and ellipsis omitted).

### FOFs/COLs

> FOFs are reviewed under the clearly erroneous standard.  A[n FOF] is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made.

Schiller v. Schiller, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (App. 2009) (internal quotation marks and citations omitted).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness.  [An appellate] court ordinarily reviews COLs under the right/wrong standard.  Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.  However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.
>
> Chun v. Bd. of Trs. of Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and brackets in original omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

Schiller, 120 Hawai'i at 288, 205 P.3d at 553.

## III. DISCUSSION

### A.   Points on Appeal Nos. 1, 2, 3, 4, and 9

For reasons described in this court's May 9, 2014 memorandum opinion, we decline to find the family court reversibly erred in regard to Hirokazu's points on appeal numbered 1, 2, 3, 4, and 9.

### B.   Points Number 5 and 6: allowing translator's testimony and FOF 40 did not constitute reversible error.

Hirokazu contends the family court erred by allowing Aki's translator, Yamaguchi to testify and by admitting her translations of Japanese language documents prepared after the May 6, 2008 trial.  Hirokazu contends Yamaguchi "was filtering matters to be in line [sic] what she thought would benefit [Aki]."  At trial, Hirokazu's counsel further objected to allowing Yamaguchi to testify because she was present throughout the entire proceedings.  Aki's counsel explained that Yamaguchi was "not going to testify as to anything but the translation [of Exhibit GGG into Exhibit OOO]" and would verify the translation of Exhibit XX into Exhibit PPP.  Hirokazu contends the family court allowed Aki to proceed with Yamaguchi's testimony in violation of Hawaii Rules of Evidence (**HRE**) Rule 615 (1993).  HRE Rule 615 provides:

> **Rule 615 Exclusion of witnesses.**  At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Under HRE Rule 615, "[w]itnesses are generally excluded from trial to prevent the possibility that testimony might be 'shaped' to match the testimony of other witnesses."  State v. Culkin, 97 Hawai'i 206, 231, 35 P.3d 233, 258 (2001) (citing Bloudell v. Wailuku Sugar Co., 4 Haw. App. 498, 504, 669 P.2d 163, 169 (1983)).  Hirokazu does not indicate whether or how he requested the family court exclude Yamaguchi so that she could not hear other witnesses' testimony prior to the June 6, 2008

trial or during proceedings in which she acted as an interpreter. As the family court acknowledged, Yamaguchi was present during the proceedings because "she was acting as an interpreter."

The family court did not abuse its discretion in permitting Yamaguchi to testify as to the accuracy of the English translations of Exhibit GGG, which was already stipulated as evidence in the May 6, 2008 trial, into Exhibit OOO. Hirokazu's point number 6 on appeal concerns Yamaguchi's testimony in which she affirmed that Exhibit FF contained a reference to the word "kabuken" and, when asked for the English translation of "kabuken," she said "the comment to the conversation say stock. But I am using that, you know, the stock certificate for the translation." Hirokazu's point on appeal is that the family court erred by finding:

> 40. According [*sic*] the Avalon Cove registration with the Japanese authorities, it states, "Effect of Rules regarding issuance of stock certificates – The Corporation issues stock certificates." Exhibit "GGG" and Exhibit "OOO"[.]

According to Hirokazu, because Yamaguchi's testimony "should not have been allowed[,]" no credible evidence supported the family court's FOF 40. Hirokazu further argues that Yamaguchi "changed her answer [to the question regarding the English translation of "kabuken"] to the one [Aki's counsel] wanted." At trial, the family court acknowledged Hirokazu's objections to Yamaguchi's translation of "kabuken" and noted that Hirokazu would be allowed to cross-examine Yamaguchi on this issue and determined it would allow Hirokazu to present rebuttal evidence or witnesses regarding ths translation. The family court heard Hirokazu deny that the document said, "stock certificate" and that instead it said "certificate of all registered items."

Hirokazu argues on appeal, "[c]learly, [Aki's] translations were prepared by a witness who understood what her translations were to say based on her being present during the May 6, 2008 proceedings." He contends "[a]ll testimony of [Aki's] translator should be stricken pursuant to [HRE] Rule 615[.]" His contention concerns the credibility of Yamaguchi's testimony and translations, which is a matter committed to the

family court's determination. The record contains evidence supporting the family court's FOF 40 and this finding does not constitute clear error.

###### C. Point 7: Denial of Hirokazu's request for a protective order and imposition of sanctions for failure to produce documents were within the family court's discretion.

Hirokazu contends the family court was required to "affirmatively find[]" he was able to obtain documents relating to Avalon Cove in order to deny his Request for Protective Order for documents relating to Avalon Cove and further erred by awarding sanctions against him for failing to provide these documents. The extent to which the family court permitted discovery "is subject to considerable latitude" and discretion. Wakabayashi v. Hertz Corp., 66 Haw. 265, 275, 660 P.2d 1309, 1315-16 (1983) (quoting In re Goodfader, 45 Haw. 317, 335, 367 P.2d 472, 483 (1961)). We do not disturb the family court's discretion in permitting discovery absent "a clear abuse of discretion that results in substantial prejudice to a party." Wakabayashi, 66 Haw. at 275, 660 P.2d at 1316. Further, under Hawai'i Rules of Civil Procedure (HRCP) Rule 26(c),[10] Hirokazu

---

[10] HRCP Rule 26(c) provides:

**(c) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the circuit where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition, after being sealed, be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and (8) that the parties simultaneously file specified documents or

(continued...)

carried the burden of showing "good cause" to support his motion for protective order.

Hirokazu indicates no authority supporting his contention that the family court was required to make certain affirmative findings in order to deny his motion for protective orders. Instead, Hirokazu relies on his and his counsel's representations to the family court that he was unable to procure the Avalon Cove documents in support of his contention that family court erred. Hirokazu notes that the family court did not find that he owned Avalon Cove. At the June 6, 2008 trial, the family court said, "I don't think that the [family court] can find he still owns Avalon Cove. I think he did transfer his interest to his mother." The family court continued, "But when that happened or how that happened, I think there is - [Otsuka] I know will probably argue that." It does not follow from this statement that the family court was unable to require Hirokazu to produce Avalon Cove documents.

At its September 19, 2007 hearing on Hirokazu's motion for a protective order against Aki's second request for production of documents, the family court asked Aki's counsel, Otsuka, to respond to Hirokazu's argument that he has no control over the documents Aki requested. Otsuka responded "[Hirokazu] was receiving it then, and in his own admission, he is saying that he is receiving it right now." Hirokazu's counsel, Okimoto, argued that Hirokazu's statements in his published book were not under oath and should not be considered "admission[s]." Otsuka further contended that Hirokazu's assertion that he had no control over Avalon Cove's documentation was inconsistent with paragraph 9 of his affidavit, which stated, "I received reports regarding the status of Avalon Cove so I would be able to help my

---

10      (...continued)
        information enclosed in sealed envelopes to be opened as
        directed by the court.

        If the motion for a protective order is denied in
        whole or in part, the court may, on such terms and
        conditions as are just, order that any party or person
        provide or permit discovery. The provisions of Rule 37(a)(4)
        apply to the award of expenses incurred in relation to the
        motion.

mother [as] she is not receiving sufficient income and needs financial assistance." Aki further points out that Hirokazu was able to produce Exhibits 37, 38, and 39 (Avalon Cove's financial statements, board meeting agenda, and 2007 tax returns) and thus undermines his contention that he had no access to such documents.

The family court found "not credible" Hirokazu's argument that "all of his statements were lies to the public to promote his books." The circuit court's decision to require Hirokazu to produce Avalon Cove documents and to deny his motion for a protective order did not constitute reversible error.

Hirokazu contends the family court could not sanction him "by awarding [Aki] attorney fees for filing of [Aki's] December 12, 2007 Motion for Civil Sanctions and Motion to Compel Discover [sic] filed August 20, 2007." Hirokazu cites no authority in support of this contention. Further, in its August 7, 2014 order accepting Hirokazu's application for writ of certiorari, the Hawai'i Supreme Court made particular note that a court's "'inherent power to curb abuses and promote a fair process which extends to the preclusion of evidence and may include dismissal in severe circumstances'" applied to discovery sanctions. Nakajima v. Nakajima, 2014 WL 3880306 (Hawai'i Aug. 7. 2014) (citations and internal quotation marks omitted). As the supreme court noted, "if the trial court has the inherent power to level the 'ultimate sanction' of dismissal, it necessarily has the power to take all reasonable steps short of dismissal, depending on the equities of the case[,]" (Id., quoting Kawamata Farms, Inc. v. United Agri Products, 86 Hawai'i 214, 242, 948 P.2d 1055, 1083 (1997) (emphasis added)) and concluded "[t]he family court's sanctions in this case fell within the scope of its authority." Id. There was no reversible error in the family court's imposition of sanctions against Hirokazu.

D.    **Point 10: The family court's COLs based on Japanese law did not constitute reversible error.**

Hirokazu contends COLs 12 and 13 must be stricken because Aki did not properly provide notice of foreign law and

25

the family court did not find that foreign law and not Hawaiʻi law would be applied. The family court's COLs 12 and 13 were as follows:

> 12. Act 128 of Companies Act (Japanese law) provides:
>
> Article 128 (Transfer of Shares in Company Issuing Share Certificate)
>
> (1) Transfer of shares in a Company Issuing Share Certificate shall not become effective unless the shares certificates representing such share are delivered; provided, however, that this shall not apply to transfer of shares that arise out of the disposition of Treasury Shares.
>
> Companies Act, Article 128(1)
>
> 13. This Court concludes that under Japanese law when stock certificates are issued, there must be delivery of stocks for there to be effective transfer of stocks.

Hirokazu contends the family court's consideration of Japanese law was in error because HRE Rule 202 and HRCP Rule 44.1 required Aki to provide him notice before the family court could take judicial notice of "the laws of foreign countries[.]" HRCP Rule 44.1 provides:

> **Rule 44.1. DETERMINATION OF FOREIGN LAW.**
>
> A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the [Hawaii] Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

(Emphasis added.)

Aki cited HRCP Rule 44.1 as the applicable standard in her Motion to Determine Foreign Law wherein she moved the family court "for an order determining that under Japanese law, as a matter of law, [Hirokazu] ha[d] failed to show that the stocks he held for Avalon Cove, Inc. were transferred to his mother, [Shizume], because the alleged transfer [did] not comply with Article 128(1) of the Companies Act (Japanese law)." Aki's pleading cited Act 128 of (Japan's) Companies Act, requiring the delivery of a share certificate to make a transfer effective, thus providing notice to Hirokazu in compliance with HRCP Rule

44.1. The family court's COL 13 was a finding that it was applying Japanese law.

### E. Point 11: The family court was not required to issue a judgment for sums prior to its garnishment order.

Hirokazu apparently contends the family court lacked authority to issue its "garnishment order" and therefore FOF 53 is "clearly erroneous." FOF 53 provides:

> 53. [Aki] incurred SIX HUNDRED FIFTY THOUSAND (650,000) Yen in appraisal fees charged by Katsuhiro Miyata. The currency exchange rate as of August 6, 2008 was $1=108.11 Yen. Thus, [Aki] incurred SIX THOUSAND AND TWELVE AND 11/100 Dollars ($6,012.11) in reasonable and necessary appraisal fees.

A copy of HRS § 652-9 (1993),[11] was appended to the family court's August 12, 2008 order for the issuance of a garnishee summons against Hirokazu. Hirokazu contends requirements under HRS § 652-9 were not met because there was "no contract that [Hirokazu] pays [Aki] the appraisal costs."

"The primary purpose of a garnishment is to enforce the payment of a judgment." Int'l Sav. & Loan Ass'n, Ltd. v. Wiig, 82 Hawaiʻi 197, 202, 921 P.2d 117, 122 (1996) (citing First Nat. Bank in Chester v. Conner, 485 S.W.2d 667, 671 (Mo. Ct. App.

---

[11] HRS § 652-9 provides:

> §652-9 Garnishee may be heard on notice to plaintiff. Whenever any person summoned as a garnishee may be desirous of so doing, the person may apply to the district judge or any judge of the court from which the summons may have issued, and the judge having caused reasonable notice to be given to the plaintiff in the action, shall proceed to take the deposition of the person thus summoned, and make such order as may be proper in the premises, at any time previous to the date appointed for hearing the cause, and the person summoned as garnishee, shall be taken to have obeyed the summons. If it appears that there are conflicting claims to any moneys held for safekeeping, debt, goods, or effects in the garnishee's hands, any time after the summons is served the garnishee may be permitted upon order of the judge to pay into the court any moneys held for safekeeping, debts, goods, or effects in the garnishee's hands, less any reasonable costs and attorney's fees allowed by the judge and the garnishee will thereupon be discharged. With or without payment into court, any garnishee may, where there are conflicting claims to any moneys held for safekeeping, debt, goods, or effects in the garnishee's hands of any amount, make application for an interpleader order and the judge shall thereupon make all orders as appear to be just and reasonable.

1972) ("a 'garnishment' is an ancillary remedy in aid of execution to obtain payment of a judgment")). The August 12, 2008 order for the issuance of a garnishee summons against Hirokazu was filed pursuant to the Divorce Decree, filed on June 24, 2008, which required Hirokazu to pay all appraisal costs. The family court concluded that it had discretion under HRS § 580-47 (Supp. 2006) "to have one of the parties pay for Appraisal Fees and Attorney Fees." HRS § 580-47(a) provides:

> (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable . . . (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce.

The family court acted within its discretion to grant Aki's August 12, 2008 "Ex-Parte Motion for Issuance of Garnishee Summons After Judgment," requesting garnishment of Hirokazu's accounts because he failed to pay the appraisal fee.

**F.     Point 12:   The family court did not clearly err by entering FOFs 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 41, 42, 43, 44 and 53.**

Hirokazu contends FOF 26[12] constitutes clear error because "no evidence" established that reductions in account balances and sales of marital property occurred after the June 22, 2006 "Stipulation Re: Temporary Relief; Order". In support of his contention, he refers to his testimony that he had reduced, transferred, sold, and reduced properties prior to the financial restraining order, for necessary reasons such as having

---

[12]     FOF 26 states:

> 26.   There was evidence of numerous violation [sic] of the financial restraining order dated June 22, 2006 by [Hirokazu]. They include substantively reducing the account at Citibank, Japan (Ex. 52); closing of his bank account at Mitsui-Sumitomo Bank (Ex "3"); selling his Mercedes M1320 and 1995 Yamaha Wave Runner; closing Ameriprise account (Ex "10" & "P["], "52"); closing E-Trade account. Ex "EEE" & 52; and selling Asset Gain in June of 2007 for $40,000 in violation of financial restraining order. Ex M (Heisei 19 6-18 and 6-17 entries).

his account "hacked[,]" in the course of prudent business dealings, or for living expenses, as provided for in the June 22, 2006 order. Hirokazu also testified that some reductions in his account balance occurred because he had been "swindled by a man [Aki] introduced" to him. Hirokazu's contention relies on his own testimony, while the family court's finding referred to exhibits 3, 10, 52, M, P, and EEE which, when taken together, constituted substantial evidence supporting the family court's finding that Hirokazu had violated the June 22, 2006 financial restraining order. We conclude FOF 26 does not constitute clear error.

Hirokazu conclusorily states that FOFs 27, 28, 29, 30, 31, 32, and 33 are clearly erroneous. In each of these FOFs, family court found there was "nondisclosure[,]" and Hirokazu acknowledges this to be true because he states that although he did not initially disclose them in his Asset and Debt statement, he did so eventually. The family court's FOFs are not clearly erroneous.

Hirokazu refers exclusively to his testimony as evidence supporting his contentions that FOF 34, 35, 36, 37, and 38 are clearly erroneous. The family court's FOF 34 was supported by Asset and Debt statement exhibits CCC, DDD, and EEE and therefore did not constitute clear error.

Hirokazu contends FOFs 35 and 36 are clearly erroneous because he sold his Avalon Cove stocks to his mother. During family court proceedings, Hirokazu introduced a document that he represented to constitute evidence that he sold 200 stocks of Avalon Cove to his mother for 10,000,000 yen ($100,000) prior to the parties' marriage. Hirokazu conceded the transfer itself was disputed, but argues the date of his August 16, 2004 transfer of his interests in Avalon Cove pre-dated the parties' November 19, 2004 marriage was not disputed and therefore the family court erred by finding Avalon Cove was marital property.

The family court found the "transfer" of Avalon Cove stocks from Hirokazu to his mother was invalid because: (1) signatures and seals are required for valid formally written contracts under Japanese law and there were no signatures on the

alleged agreements between Hirokazu and his mother; (2) the document was not a transfer of "stock certificates" as required under Japanese law; and (3) there was no evidence of delivery of the stock certificates to Hirokazu's mother which is also required under Japanese law for a valid stock transfer. Japan's "Companies Act" states, "[t]ransfer of shares in a Company Issuing Share Certificate shall not become effective unless the share certificates representing such shares are delivered[.]"[13] The Avalon Cove registration with the Japanese authorities states: "Effect of Rules regarding issuance of stock certificates – The Corporation issues stock certificates[.]" FOFs 35 and 36 are supported by the record and do not constitute clear error.

Hirokazu acknowledges that "[w]hile [FOF] 37 is correct, it assumes there is something wrong with the lack of a signature of [Hirokazu] or his mother being present." Hirokazu does not articulate how alleged-assumptions in FOF 37 constitute clear error and we decline to find the family court erred. Hirokazu fails to cite to legal authorities or make persuasive arguments in support of his contentions that FOFs 37, 42, 43, and 44 constitute clear error and does not mention FOF 41 at all. We can find no error.

Hirokazu conclusorily contends FOFs 46, 47, 48, 49, 50, and 51 are clearly erroneous because "appraisal reports valuing the Meguro and Setagaya properties . . . are hearsay documents." Hirokazu cites no record, authorities, or evidence to support this contention and we find no error.

Hirokazu contends FOF 52 is clearly erroneous in part because he was not afforded notice as required under HRCP Rule 44.1 that Aki would file her Motion to Determine Foreign Law. We rejected Hirokazu's claim based on HRCP Rule 44.1 supra. FOF 52(C) required Hirokazu to pay Aki's attorney's fees incurred in

---

[13] Article 128 of the Companies Act under Japanese law states: "(1) Transfer of shares in a Company Issuing Share Certificate shall not become effective unless the share certificates representing such shares are delivered; provided, however, that this shall not apply to transfer of shares that arise out of the disposition of Treasury Shares." Companies Act, Act No. 86 of July 26, 2005, art. 128, (Translated Apr. 1, 2009) (Japan), available at http://www.japaneselawtranslation.go.jp/law/detail/?id=1961&vm=04&re=02&new=1 (Japan).

filing three motions, including the Motion to Determine Foreign Law. The family court had discretion to allocate to Hirokazu responsibility for attorney's fees and costs incurred "by each party by reason of the divorce." HRS § 580-47(a). Aki's Motion to Determine Foreign Law was filed by reason of the divorce proceedings. We find no error with the family court's FOF 52.

Finally, we addressed, and rejected, Hirokazu's contention that FOF 53 constitutes clear error supra.

## VI. CONCLUSION

We affirm the following, all entered in the Family Court of the Second Circuit:

(1) "Order Denying Plaintiff's Motion for Protective Order Against Defendant's Second Request for Production of Documents Dated April 6, 2007, filed 6/4/07," filed October 5, 2007;

(2) "Order (re: Hearings on 1) Plaintiff's Motion for Protective Order Against Defendant's Second Request for Production of Documents Dated April 6, 2007 Filed 12/6/07; 2) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 3) Defendant/Cross-Plaintiff Aki Nakajima's Motion to Continue Trial Filed 12/17/07; and 4) Other Matters)," filed January 15, 2008;

(3) "Order (re: Hearings on1) Defendant/Cross-Plaintiff's Aki Nakjima's Motion for Civil Sanctions Under HFCR Rule 37 Filed 12/17/07; 2) Defendant/Cross-Plaintiff Aki Nakajima's Motion to Determine Foreign Law as to Alleged Sale of Stock Filed 2/27/08; 4) Defendant/Cross-Plaintiff Aki Nakajima's Motion for Pre-Decree Relief filed 12/31/0u; and 5) Other Matters)" filed May 2, 2008;

(4) "Decree Granting Absolute Divorce," filed June 24, 2008;

(5) "Order Granting Award of Alimony and Attorrneys Fees and Costs," filed July 8, 2008;

(6) "Order Selecting Real Estate Appraiser," filed July 16, 2008;

(7) "Order Granting Ex Parte Motion for Issuance of Garnishee Summons After Judgment; Garnishee Summons and Order (as

found in Defendant/Cross-Plaintiff's Ex Parte Motion for Issuance of Garnishee Summons After Judgment: Declaration of Junsuke Otsuka; Exhibit "A"-"D"; Order Granting Ex Part Motion for Issuance of Garnishee Summons after Judgment; Garnishee Summons and Order, Garnishee Information)," filed August 12, 2008;

(8) "Garnishment Order," filed November 19, 2008;

(9) "Order (re: Hearing on Plaintiff's Motion for Clarification of Divorce Decree, entered on June 24, 2008, filed on July 7, 2008, and Other Matters)," filed November 26, 2008; and

(10) "Supplemental Decree" filed December 29, 2008.

DATED: Honolulu, Hawai'i, October 28, 2014.

On the briefs:

Blake T. Okimoto
for Plaintiff/Cross-Defendant/
Appellant.

Junsuke Otsuka
for Defendant/Cross-Plaintiff/
Appellee.

Associate Judge

Associate Judge